MATHILDA HEUMANN and ALVIN HEUMANN, Appellants, v. CORDELIA LUSBY.—146 S. W. (2d) 557.

Division One, January 4, 1941.

*Webster F. Karrenbrock* and *Wm. Waye, Jr.,* for appellants.

*Walker Wooldridge* and *Cullen, Storckman & Coil* for respondent.

GANTT, J.—Action in ejectment. The answer and reply presented an issue of title to real estate as follows:

"East half of Block Nine (9) of Koenig's Second Addition to the City of Wentzville, Missouri; being the east half of Lot 2 and all of Lot 3 of said Block Nine (9), described as follows: Beginning at the southeast corner of said Block No. Nine (9), thence westwardly along the south line of said block, 100 feet to corner; thence northward on a line parallel with the east line of said block, 152 feet to the north line of said block; thence eastward along the north line of said block 100 feet to corner; thence southward along said east line 152 feet to the place of beginning. Being the same property conveyed

54

to Richard L. Anselm by Henry Koch and wife, which deed is recorded in the Recorder's office of St. Charles County, Missouri.''

The chancellor found that defendant owned the real estate. Judgment accordingly, and plaintiffs appealed.

R. L. Anselm is the common source of title. On August 9, 1921, he gave a deed of trust on the real estate to secure a note for $1000. On October 8, 1921, he gave another deed of trust on the real estate to secure a note for $295. On June 17, 1926, he gave another deed of trust on the real estate to secure a note for $2150. On August 5, 1931, Theo. C. Heumann died intestate. At that time he owned the $1000 note and the $295 note, and Cordelia Lusby owned the $2150 note.

The administrators of Heumann's estate foreclosed the first deed of trust, which secured the note for $1000. At the sale on March 21, 1936, Alvin Heumann purchased the real estate for the heirs of Theo. C. Heumann.

Later Cordelia Lusby foreclosed the third deed of trust, which secured the note for $2150. At the sale on April 4, 1936, she purchased the real estate.

Plaintiffs claim title under the foreclosure of the first deed of trust. Defendant claims title under the foreclosure of the third deed of trust.

It is admitted that ''the only matter in dispute is whether or not a contract was made by Theodore C. Heumann in his lifetime with Cordelia Lusby whereby his two deeds of trust became subordinated to the deed of trust held by Cordelia Lusby. If he did make this conrtact, then the Cordelia Lusby deed of trust became a first deed of trust and the two deeds of trust held by Heumann became, respectively, second and third deeds of trust.''

The rule may be stated as follows: The party relying on a contract of this kind must ''prove his case, not by vague or shadowy evidence, not even by a mere preponderance of evidence, but by evidence so unquestionable in its character, so clear, cogent and convincing, that no reasonable doubt can be entertained of its truth; that no such doubt can linger either as to the existence of the contract or the certainty of its terms, or that the plaintiff has wholly performed his part.'' [Russell v. Sharp, 192 Mo. 270, l. c. 285, 91 S. W. 134.]

In substance there was evidence for defendant as follows: Dina Justice testified that she and Cordelia Lusby attended a certain sale in the fall of 1929; that Heumann there talked with Cordelia about taking over his interest in the property; that Cordelia said she did not want more money in the property; that later Heumann visited witness for the purpose of selling her some furniture; that on this visit he offered to sell witness his interest in the property; that she was not interested; that the following spring he called on witness to

sell her the furniture; that she inquired if he still wanted to sell his interest in the property; that he said Cordelia had taken that over; that the reason she made the inquiry was that she was interested because she had money and the banks were getting shaky.

Murray E. Foristell testified that he had known Heumann forty or forty-five years; that in the spring of 1931 he had lunch with him; that Heumann said Cordelia paid him money on a note and that he promised her the income from this property for four years; that Heumann said the property is worth $3500; that she paid him a certain sum of money and he promised to let her note come first; that, on cross-examination, he testified that Heumann said Cordelia paid him some money and he promised to let her get her money before he got a copper cent.

The testimony of Dina Justice does not tend to prove the contract. On the contrary, it tends to prove that Heumann sold the Anselm notes to Cordelia.  ·

The testimony of Murray E. Foristell is an effort to repeat casual conversations with Heumann which occurred seven years prior to the trial.  He testified to three different and inconsistent statements of Heumann with reference to dealings with Cordelia.  It could not be contended that his testimony was ''clear, cogent and convincing.'' We next consider evidence as follows:

Elsie Leonard testified that she, Mrs. R. L. Anselm and Cordelia Lusby are sisters; that for many years Cordelia owned or was interested in the telephone plant at Wentzville; that she managed the business; that the plant was sold to a company and Cordelia continued as manager; that during the management of the business she accumulated property; that the witness was acquainted with Theo. C. Heumann; that while she was visiting Cordelia in 1930 Theo. C. Heumann talked in the hearing of witness to Cordelia about the Anselm notes; that he tried to sell the notes to Cordelia; that Cordelia said she had enough money in the place; that Heumann told Cordelia not to worry for the place was worth her note and his notes; that Cordelia said that might be true but she did not care to have more money in the place; that thereupon Heumann said if Cordelia would pay him $500 and the interest on the Anselm notes to date, he would subordinate his deeds of trust to her deed of trust; that he would guarantee that she would not lose anything when the property was sold and that he would see that she got her money first; that Cordelia said she would consider the proposition; that Heumann said Anselm was entitled to a credit of $477.50 on the notes; that the interest on the Anselm notes to date was $114.10; that the $500 would be a payment on the principal; that Cordelia said she would think it over and suggested that he call later and she would give him her answer; that Heumann returned in a few days to the telephone office; that witness was present; that Cordelia told him she had de-

cided to accept his proposition if he would subordinate his deeds of trust to her deed of trust and guarantee that she would not lose any money; that upon Heumann promising to do so, he figured the interest and Cordelia paid him $614.10 in cash; that Heumann did not have the Anselm notes with him but said he would give credit on the note; that the money was paid to Heumann in twenty, ten, five and one dollar bills and some silver; that she saw Cordelia count the money and pay it to Heumann; that no papers were executed by either Cordelia or Heumann with reference to the transaction; that Cordelia earned her own money and managed her own business; that Tieman (tavern keeper), Heumann, Cordelia, Ellen Cody (telephone operator) and witness were present when Heumann and Cordelia made the contract and Cordelia paid the money to Heumann; that this transaction occurred seven years before the trial.

It will be noted that there is no explanation of the absence of Tieman as a witness. Of course, Cordelia may have had $614.10 in cash in the telephone office. However, it is not likely that the interest on the Anselm notes was figured by Heumann or Cordelia at the telephone office without the notes. Furthermore, it is not likely that Cordelia, a business woman, paid to Heumann money to be credited on a note without a receipt from Heumann. Furthermore, there is no evidence tending to show on which Anselm note the money was to be credited.

Furthermore, it is in evidence that after the death of Heumann, Anselm applied to the Home Owners Loan Corporation for a loan on the property. In this connection Cordelia, as mortgagee, made written statements to said corporation. In the first she stated that she owned a first deed of trust on the property. Attached to this statement was a confidential report with reference to the property. In this report she stated that she owned a second deed of trust on the property, and that she could not renew the indebtedness because the holder of the first deed of trust was foreclosing. In the second she stated that she owned a third deed of trust on the property. These statements of Cordelia are not in harmony with the testimony of Elsie Leonard that Cordelia and Heumann entered into a contract, whereby Heumann's first and second deeds of trust were subordinated to Cordelia's third deed of trust. Defendant did not prove the alleged contract by convincing evidence.

The judgment is reversed and the cause remanded with directions to enter judgment adjudging title to the above described real estate to be in plaintiffs, and with directions to enter judgment for plaintiffs for possession of said real estate, and for damages for rent at $20 per month from the commencement of this suit. All concur.